J-A23008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: CODY ZEDAK, AN INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: CHRIS ZEDAK | : : : : : : : : | No. 112 WDA 2025 |

Appeal from the Order Entered December 31, 2024
In the Court of Common Pleas of Beaver County
Orphans' Court at No(s):  No. 152 of 2018

BEFORE:  PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.:  **FILED: October 23, 2025**

Chris Zedak ("Chris") appeals from the order entered on December 31, 2024, denying his amended petition to appoint substitute guardian of the person of Cody Zedak ("Cody") and appointing Rivers Community Fiduciary Services ("RCFS") as plenary guardian over the person and estate of Cody Zedak. After careful review, we affirm.

The orphans' court set forth a comprehensive factual history in its Rule 1925(a) opinion dated April 8, 2025. *See* Orphans' Court Opinion, 4/8/25, at 3-51. As the parties are intimately familiar with these facts, we do not fully restate them here. Briefly, Cody was declared incapacitated on May 4, 2018, after a roll-over car accident resulted in a traumatic brain injury and blindness, among other medical conditions, in October of 2013, when Cody was 15 years old. RCFS was appointed as plenary guardian of Cody's estate at that time.

On May 20, 2019, Cody's twin sister, Kyleigh McCullough ("Kyleigh") was appointed as sole guardian of Cody's person. Kyleigh was 20 years old at the time of this appointment. Kyleigh requested to withdraw as guardian of the person in 2023, because she wanted to start her own family. Initially, Kyleigh signed a written consent to allow Chris, the biological father of Cody and Kyleigh, to become Cody's guardian. Subsequently, Kyleigh withdrew her consent. After allegations of neglect surfaced, Adult Protective Services ("APS") filed a petition to intervene and requested a third-party be appointed as guardian of the person. That request was granted. On August 22, 2023, RCFS was appointed as temporary guardian of the person until a hearing could be held to determine the appropriate permanent guardian of the person.

Ultimately, a two-day hearing was held on August 19, 2024, and August 22, 2024. Kyleigh and Chris both testified. The court also heard testimony from Eric O'Connor, vice president of RCFS; Ariel Goehring, Cody's support coordinator for Beaver County Behavioral Health; Hanna Wilkins, a friend of both Cody and Kyleigh; Brooke Leport, an investigator with APS; and Jarrad Miesel, Cody's guardian ad litem. The court took the matter under advisement and allowed each party to file briefs in support of their positions. Prior to the final order, Chris filed a motion to reopen the record to provide additional testimony and evidence. The court denied the motion after oral argument.

The final order was entered on December 31, 2024, in which the court issued the following findings of fact:

- 2 -

1. Cody [] is incapacitated and has been so since October 2013.

2. Cody [] suffers from conditions or disorders, including but not limited to, trial impairment in the right ear, anxiety, obesity, hypertension, asthma, blindness in both eyes, epilepsy, and a traumatic brain injury.

3. As a result of Cody['s] disabilities, he requires full 24/7 care in a home with full ADA handicapped access.

4. [RCFS] was appointed plenary guardian of the estate and co-guardian of the person of Cody [] alongside Kyleigh [] on or about May 2018.

5. Kyleigh [] was appointed as sole plenary guardian of the person of Cody [] in May of 2019.

6. Chris[], Cody['s] father, filed an amended petition to appoint substitute permanent guardian of the person of Cody [] on July 22, 2023.

7. Subsequently, [Kyleigh] withdrew as guardian in August of 2023.

8. Upon [Kyleigh's] withdrawal, [the orphan's court] reinitiated [RCFS] as temporary guardian of the person of Cody [].

9. Two evaluations were performed by Dr. Tod Marion, M.P.H., Ph.D. of Cody [], at the request of Chris []. These were performed in May of 2023 and March of 2024.

10. In his reports, Dr. Marion discussed the negative influence of Chris [] on Cody [] and those caring for him.

11. Neither of the evaluations recommended that Chris [] be Cody['s] guardian.

12. [APS] intervened in this case after they substantiated allegations that were raised in a report of need made regarding Cody [].

13. These allegations include, but are not limited to, Chris [] allowing Cody [] to drive a vehicle and allowing Cody [] to ride a

rollercoaster, despite knowledge that such actions were unsafe for Cody.

14. Testimony from multiple individuals at the hearing cited behaviors and actions by Chris [] that make him undesirable as Cody['s] guardian.

15. Chris [] has displayed intimidating and aggressive behaviors towards Cody['s] direct support staff and sister, which impacts Cody's living space and well-being.

16. Chris [] has threatened to withhold Cody [] from being able to see his sister, Kyleigh [].

17. Due to his behaviors, Chris [] has been prohibited from being on the grounds of Cody['s] present care home.

18. Testimony from Ariel Goehring, MSW, LSW, showed a correlation between Cody['s] struggles with impulse control and inappropriate behavior and the recent "uptick in family dynamics."

19. Kyleigh [] testified to a[n] extensive history of abuse by Chris [], directed at both her and her brother.

20. [The orphans' court found] credible evidence and testimony produced at the hearing which indicated that Cody['s] current placement is safe, provides adequate nutrition, and provides Cody with amply opportunity for independence and outside activities.

21. [The orphans' court found] credible all testimony and evidence provided by the professionals at the hearing, including Eric O'Connor, Brooke Leport, and Ariel Goehring, in regards to their recommendations that Chris [] not be appointed guardian.

22. The appointed guardian ad litem issued a report and testified that it would be in the best interest of Cody [] for [RCFS] to be made permanent plenary guardian of the person and for the court to order a follow up psychological evaluation from a new psychologist in order to specifically address the issues of possible plans to temporarily separate Cody from his family.

Order, 12/31/24, at 1-3 (unnecessary capitalization omitted).

Within this order, the court scheduled a review hearing "to evaluate the status of Cody Zedak and whether or not the appointment of a third-party guardianship service as opposed to a family member is still appropriate" for July 12, 2025.[1] Chris filed a motion to reconsider, including many of the same alleged new facts he presented in his motion to reopen the record. Prior to a decision on the motion to reconsider, Chris filed a timely notice of appeal to this Court. Pursuant to the orphans' court's order, Chris filed a Rule 1925(b) statement and an amended statement.[2] **See** Pa.R.A.P. 1925(b). The orphans' court issued a Rule 1925(a) opinion in support of its December 31, 2024 order. **See** Pa.R.A.P. 1925(a).

_____

[1] This date was changed in a subsequent order to June 12, 2025. **See** Order, 1/3/25 (single page).

[2] We note with displeasure that Chris' Rule 1925(b) statement and brief do not clearly articulate the issues he requests we address. **See** Pa.R.A.P. 1925(b)(4)(ii) (requiring concise statement to state the errors with "sufficient detail to identify the issue to be raised"), 2119(a) (requiring the argument section to set forth "the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."), 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."), 2117(b) ("The statement of the case shall not contain any argument."). At many points, Chris' arguments overlap each other and do not match the questions presented. Chris also includes argument within his case statement. Further, Chris rarely provides citation to relevant authorities, the record, and the location where the issue was preserved below. Finally, we note that, at times, Chris' argument ends in the middle of a thought or sentence. **See** Appellant's Brief, at 70 (as an example, Chris writes: "There is ample evidence in the record to support the court's conclusion… The court, however, made no findings as to whether… was…") (emphasis omitted). Notwithstanding these deficiencies, we will address the arguments we can discern that were properly preserved below.

Chris raises the following questions for our review:

1. Did the [orphans'] court abuse its discretion or commit reversible error by failing to adequately develop the record, including denying [Chris'] motions for temporary relief and to supplement the record without a hearing, where the issues involved were urgent, time-sensitive, and material to the best interest of the incapacitated person (IP)?

2. Did the [H]onorable [orphans'] court error (sic) in failing to order an updated psychological evaluation by an independent expert, despite recommendations from the guardian ad litem and counsel for the IP, before approving a drastic plan to separate the IP from his father and family?

3. Did the [H]onorable [orphans'] court improperly disregard the expressed and unrebutted preference of the IP to live with and be cared for by [Chris], in violation of 20 Pa.C.S.[A.] § 5511(f)(1)?

4. Did the [H]onorable [orphans'] court commit reversible error by failing to safeguard the IP's best interests in accordance with the standards set forth in **Estate of Haertsch**, 649 A.2d 719 (Pa. Super. 1994), including the failure to ensure that any order affecting guardianship, visitation, or separation was based on current, comprehensive, and independently verified findings?

5. Did the [orphans'] court error (sic) in authorizing or failing to prohibit the current guardian's plan to immediately and indefinitely sever the IP's contact with his father, without any judicial findings as to the psychological or emotional impact on the IP?

Appellant's Brief, at 9-10 (suggested answers and unnecessary capitalization omitted).

As all of Chris' issues challenge the order appointing a plenary guardian of the person of Cody, we begin with our standard of review. "The selection of a guardian is within the sound discretion of the orphans' court, and this Court will not disturb that selection absent an abuse of discretion." **In re C.A.J.**,

319 A.3d 564, 572 (Pa. Super. 2024) (citation omitted). "Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the [orphans'] court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." **In re Duran**, 769 A.2d 497, 506 (Pa. Super. 2001) (citation omitted). Furthermore, "[b]ecause the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." **Estate of J.L.C.**, 321 A.3d 999, 1003 (Pa. Super. 2024) (citation omitted).

Chris combines his first and second questions presented into one argument section. We therefore address them together. Chris asserts the orphans' court erred in denying two post-hearing motions. **See** Appellant's Brief, at 47. Chris claims "[t]hese motions directly addressed new and material developments that arose after the evidentiary hearings concluded, including (1) an updated psychological evaluation and (2) significant concerns regarding the guardian's plan to impose an indefinite, total separation between the IP and his father." **Id.** Chris believes the orphans' court "ignored" the recommendation for a new psychological evaluation in its December 31, 2024, order. **Id.** at 48.

The orphans' court thoroughly addressed this claim in its opinion, and we find no abuse of discretion.

First and foremost, it should be known that this court has scheduled a review hearing in this case for the month of June, 2025, for the sole purpose of continuing to evaluate and address these changing conditions as it relates to Cody's guardianship. 20 Pa.C.S.[A]. § 5512.1, as amended by Act 61 of 2023, only specifically states that such review hearings are required in the cases where the alleged incapacitated person's capacity may change. However, [the orphans' court] believes that in cases such as this, where there are still ongoing developing facts and issues surrounding the guardianship itself, a review hearing is warranted to address them. Unfortunately, due to the fact that the [orphans'] court lacks jurisdiction over the case presently on appeal, it is unable to order that the planned evaluation be completed before the said review hearing. It is the [orphans'] court hope that such an evaluation will still be completed in time and that the court may then further consider the current guardian's plan to separate Cody from his family to cool off these family dynamics and whether or not said plan is serving Cody's best interests as intended.

[The orphans'] court could not justify the further prolonging of this case based on the frankly weak arguments presented by [Chris] during his argument in support of his motion to reopen the record. At the time of the hearing on the motion, Cody had been without a permanent guardian of the person for almost a year and a half. [Chris] sought to admit evidence into the record that significantly pre-dated the two-day hearing already held in this matter. Furthermore, [Chris] sought to include e-mails from a Dr. Konkwo, which are hearsay given that [Chris] did not have this witness available at the hearing. The bulk of the documents that [Chris] sought to have admitted into the record could have been, and should have been, brought forward during the two-day hearing in August alongside relevant testimony and witnesses. Instead, [Chris] sought to further extend and belabor these proceedings due to his own failure in performing the required due diligence in preparation for the original two-day hearing.

Orphans' Court Opinion, 4/8/25, at 54-55 (unnecessary capitalization and record citations omitted).

As the orphans' court noted, both issues Chris currently appeals were known at the two-day hearing held in August of 2024. The evaluation Chris

sought to update was dated March 1, 2024. Included in this evaluation is the recommendation that Cody be separated from Chris for a period of time "to see how Cody does over that time frame. This would provide the staff and Cody time to adjust." N.T. Hearing, 8/19/24, at 14, Exhibit P2 (stipulation that Dr. Marion's report dated March 1, 2024 is admissible as exhibit P2). RCFS indicated it intended to extend that recommendation to the entirety of Cody's family to see if it helps Cody's behavior. **See id.** at 146-48. O'Connor explained this would include Kyleigh, not just Chris, to give Cody "time to become Cody." **Id.** at 148. Clearly, then, this was not a new development that occurred after the hearings. Chris was aware since he received the March 1, 2024 report that it was recommended that Cody have no communication with him for a period of time to determine if that changed Cody's behaviors. We fail to see how the orphans' court erred in denying Chris' motion to reopen the record as these were not new developments as he now alleges. As such, Chris' first two issues do not merit relief.

Chris next argues the orphans' court did not consider Cody's preference as to whom he wants to be his guardian. **See** Appellant's Brief, at 49. He further asserts the court did not allow him access to the results of the interview conducted in camera. **See id.** Chris claims there was "unrebutted testimony" that Cody desired to be cared for by Chris. **Id.** We find this issue waived and without merit.

Chris does not provide any citation to the record or to where he preserved this issue with the orphans' court. **See** Pa.R.A.P. 2119(c), (e) (providing an appellant's argument section must include a reference to the record and statement of place of raising or preservation of the issue). After a thorough review of the record, we cannot find an objection to the procedure the orphans' court utilized to obtain Cody's preference. In fact, Chris stipulated to the process used:

> The court: All right. In chambers off the record we had a discussion about my having to interview Cody, which I think we've agreed I will do.
>
> I will have the guardian ad litem and his counsel in the same room as I go about this process.
>
> And everybody has agreed to that; is that correct?
>
> [Chris' counsel]: Correct.

N.T. Hearing, 8/19/24, at 40 (unnecessary capitalization omitted).

The orphans' court explained it utilized an in camera interview instead of testimony "given Cody's susceptibility to manipulation by his family members." Orphans' Court Opinion, 4/8/25, at 57. We find no error in this procedure.

Furthermore, unlike Chris claims, there was testimony indicating Cody frequently changed his mind about whom he wanted to live with and be his caregiver. **See** N.T. Hearing, 8/19/24, at 67, 84-85, 171; N.T. Hearing, 8/22/24, at 73-74, 80, 110, 114, 149, 150. Cody wavered between Kyleigh, Chris, and his mother at times. The testimony that Cody wanted Chris to be

- 10 -

his guardian was far from unrebutted. As such, we find this claim both waived and, in any event, without support in the record.

Next, Chris again argues the orphans' court erred in allegedly endorsing the separation plan recommended by Dr. Marion. **See** Appellant's Brief, at 50. Chris' single page argument provides us with no citations to the record and only one legal citation, to 20 Pa.C.S.A. § 5512.1(b)(3). **See id.** at 50-51. We find this claim both waived and without merit.

Initially, we must address whether we can consider this claim, as it was not raised in Chris' Rule 1925(b) statement to the orphans' court. The separation plan was mentioned in Chris' Rule 1925(b) statement under paragraph 6, however, the challenge is directed at the orphans' court's choice of guardian of the person. The claim ends with "it was an error to ever consider this individual as guardian of the person[.]" Rule 1925(b) statement, 2/12/25 (unpaginated). As Chris did not challenge the separation plan itself in his 1925 (b) statement, we find this claim waived.

Alternatively, this claim is meritless. The only citation to legal authority in support of this claim is Subsection 5512.1(b)(3), which provides a court order appointing a limited guardian of the person may include, in part, language that "[a]ssur[es] that the incapacitated person receives such training, education, medical and psychological services and social and vocational opportunities, as appropriate, as well as assisting the incapacitated person in the development of maximum self-reliance and independence." 20

Pa.C.S.A. § 5512.1(b)(3). As Chris is challenging the final order appointing a plenary guardian, this subsection does not apply to the current order under appeal. To the extent that Chris is challenging the guardian's decision to follow the doctor's recommendation of separating Cody from his family for a period of time, as discussed above, there was substantial support for the recommendation and the court ordered a follow up hearing to see if the recommendation was beneficial to Cody. **See** N.T. Hearing, 8/19/24, at 14, Exhibit P2, 146-48; Order, 12/31/24, at 3, 5. We are unable to further decipher what relief Chris seeks in this argument section. We therefore find it both waived and without merit.

In his next argument section, Chris asserts the orphans' court "exhibited bias" against him and erred in not weighing the evidence in his favor. Appellant's Brief, at 51 (unnecessary capitalization omitted). Chris further claims the orphans' court's order was inconsistent with its own prior findings. **See id.** at 52.

Chris does not provide any citations to the record directing us to the exhibition of bias by the orphans' court. Independently, we are unable to find any evidence of bias in the orphans' court's proceedings. Further, we will not act as counsel and scour the record in search of what Chris is referring to in claiming these findings were inconsistent. **See J.J. DeLuca Co., Inc. v. Toll Naval Associates**, 56 A.3d 402, 411 (Pa. Super. 2012) (finding a claim

waived for failure to develop the argument). We therefore find this claim waived for failure to develop it.

Even if the claim were not waived, it has no merit. Because the orphans' court sits as factfinder, we are bound by its credibility determinations. *See* ***Estate of J.L.C.***, 321 A.3d at 1003. Chris has provided nothing to indicate the orphans' court abused its discretion in its credibility and factual findings.

Notably, the orphans' court thoroughly addressed its credibility findings:

[The orphans' court] believes very strongly that none of the facts relied upon were either immaterial or outdated, but in fact [were] supported through a lattice of interlocking, supporting testimony from multiple witnesses.

First, Kyleigh objected to [Chris'] placement as guardian due to his history of abuse of both her and Cody and that he was incapable of caring for Cody. [The orphans' court] did not find any evidence or testimony showing [Chris] was incapable of caring for Cody, but did find credible that [Chris] has a history of abuse and still used abusive language with Cody. This was supported through testimony of Kyleigh, Hanna, and [Chris].

Second, Ariel objected to any family member's placement as guardian due to the ongoing and significant family strife. [The orphans' court] found a significant weight of evidence and testimony to support this claim. Specifically, [the orphans' court] found credible the testimony from all parties that there was significant family dynamics at play and that this strife was having a negative impact on Cody. [The orphans' court] also found credible the testimony by Kyleigh and Hanna that [Chris] was coercive and manipulative, even going as far as to threaten to withhold Cody from Kyleigh if she didn't do what he wanted. Supporting this further was testimony from Eric O'Connor of RCFS and Brooke Leport of [APS] which tended to show [Chris'] manipulative and coercive nature.

Third, [APS] objected to [Chris'] placement as guardian due to substantiated allegations that he had put Cody at risk of harm and the family dynamics outlined above. Leport testified credibly that

- 13 -

> [Chris] has allowed Cody to drive a vehicle, despite being blind and despite his Individualized Service Plan [("ISP")] and Primary Care Physician both stating that for his own safety he should not even be in the front seat of a car.
>
> [Chris] argued that the currently appointed third-party guardian was failing to meet Cody's needs, specifically due to Cody's continued placement in THRIVE, which [Chirs] argues is unsafe, unadapted, and that the facility sought to relocate Cody. However, significant testimony was provided from multiple parties that THRIVE's facilities were more than satisfactory and any small issues that existed had been rectified. Moreover, many of [Chris'] complaints about small things like a lack of hand rails were in fact not needed by Cody according to his [ISP].
>
> Ultimately, [the orphans' court] found that there were ample facts and testimony supporting the many objections raised by the various opposing counsel to [Chris'] petition for guardianship. These facts, as outlined above, were neither immaterial [nor] out of date when considered in the larger picture of Cody's best interests.

Orphans' Court Opinion, 4/8/25, at 57-59 (record citations and unnecessary capitalization omitted). After a thorough review of the record, we cannot find the orphans' court abused its discretion.

Finally, Chris combines all prior arguments in his final argument section wherein he claims there was no legal basis to exclude him as guardian. *See* Appellant's Brief, at 52-93. Chris relies significantly on a non-precedential 2014 case that we may not rely upon, even if we were to find it persuasive. *See* Appellant's Brief, at 52, 62-67, 69-70; Pa.R.A.P. 126(b) (providing non-precedential decisions issued after May 1, 2019 may be relied upon for their persuasive value); *Commonwealth v. Hightower*, 340 A.3d 1015, 1021 n.3 (Pa. Super. 2025) (en banc) (re-affirming Rule 126(b) that we may not rely

upon non-precedential decisions prior to May 1, 2019). He only provides limited additional argument in support of his prior claims.

Chris reiterates his claims that the orphans' court erred in denying his post-hearing motions to supplement the record, in not considering Cody's preference of who is to be his guardian, and argues the orphans' court abused its discretion in its final order. ***See id.***, at 52-55, 57, 59, 61, 62, 68, 78, 85. As we addressed all of these claims above, we affirm the order of the orphans' court.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

10/23/2025